# Leech *versus* Robinson.

1. A testator gave to his wife all his property for her life, and willed that
" the entire income of my estate be divided equally amongst all my children."
To. James one seventh part of the income to be paid to him during life with
power to devise the same to such of his brothers and sisters or their children,
as he might elect: to William and Alexander each one-seventh of said income,
with no further power: to John " in like manner" one seventh part of said
income, with the same power as to James; to each of two daughters and " their
heirs in like manner," one-seventh of said income, in trust; to Frank and his
heirs " in like manner" one-seventh of said income; and declared the gift to his
heirs to be for their personal benefit for their lives and to guard against im-
providence and misfortune. He declared it to be his design to invest each of
his heirs with a life estate in the income of his property, with reversion to
their heirs. By codicil he revoked the gift to Frank and gave it to trustees
for his use, and directed partition " of the whole of my estate," to be made
when his executors and heirs " may proceed to the partition thereof." Each
part to be subject to his wife's life interest. There were other clauses.
*Held,* that the estate was given to the wife for life and to his children in fee.

2. An obscure will construed.

October 16th 1873. Before READ, C. J., AGNEW, SHARSWOOD,
WILLIAMS and MERCUR, JJ.

Error to the District Court of *Allegheny county:* No. 107, to
October and November Term 1873.

This was an action of covenant, brought to April Term 1873
of the court below, in which John D. Robinson was plaintiff and

24 P. F. SMITH—18

[Leech *v.* Robinson.]

David F. Leech was defendant. A case stated was filed in the action as follows :—

Gen. William Robinson, Jr., died on the 25th of February 1868, having made a last will and several codicils. The will was dated March 15th 1861. They were all proved March 6th 1868.

By his will he gave to his wife "all my property, estate and effects, real, personal and mixed, of whatsoever kind and nature, and wheresoever situated at the time of my decease. To have and to hold, to use, occupy and enjoy the same fully, freely and absolutely during her life.

"I hereby further declare, that it is my will that the entire income of my estate shall be divided equally, share and share alike, amongst or between all my children, as follows, that is to say :—

"3. To James Robinson, my eldest son, one-seventh part of the net income of all my estate, to be paid to him and not to any other person, as the same may be collected during his life, with power to devise the same to such of his brothers and sisters, or their children, as he may elect or nominate by his last will.

"4. To the heirs of my son, William O'Hara Robinson, one-seventh part of said income of my estate.

"5. In like manner to the heirs of my son, Alexander Parker Robinson, one-seventh of said net income.

"6. In like manner to John D. Robinson, one-seventh part of said net income, with power to devise the same by will to such of his brothers or sisters, or their children, as he may elect or nominate to that end.

"7. To my daughters, Anna R. Blair and Mary D. Shoenberger, and their heirs, in like manner one-seventh part of said income each, hereby constituting and appointing their kind friend, John H. Shoenberger, of the city of Pittsburg, trustee for my said daughters above named, with full power to act in their behalf in all matters relating to their interests in my said estate.

"8. In like manner to Frank P. Robinson my son, and his heirs, one-seventh part of said income.

"9. It being my desire in the foregoing clauses of this my last will and testament to limit the estate hereby devised, in such manner and form as to provide for each of my said heirs the income aforesaid for their personal benefit and support during their natural lives, and to guard, so far as human foresight may, against improvidence and misfortune, their respective proportions of said income to be paid over to each of my said heirs personally.

"10. It is my will also, that on the youngest child of my deceased son Alexander reaching the age of twenty-one years, then, and in that case, the whole of my estate may be subdivided and separated into seven equal parts, as represented by their respective shares and held by them in severalty, subject to the

restrictions and limitations specified in the foregoing clauses as to descent to my heirs.

\*　　\*　　\*　　\*　　\*　　\*　　\*

" I nominate, &c., my wife Mary Robinson, my son James Robinson, and my son-in-law William H. Shoenberger, executors, &c.

" That as little obscurity as possible as to phraseology may rest upon the settlement of my estate, as provided for in this my last will and testament, it is my design to invest each of my living heirs with a life estate in the income of my property, with reversion over to their heirs as provided for above, on the maturity of the youngest child of my son Alexander, when and at which time the respective proportions of the heirs of my sons William and Alexander may be set apart and vested in them in fee."

By the first codicil he appointed his friend John Morrison another executor.

Another codicil was :—" I do hereby rovoke and cancel, annul and render as of no validity or force whatever, the eighth clause of my said will devising to Frank P. Robinson one-seventh part or interest in the income, personal or realty, of my said estate, or in the proceeds or avails of the same, hereby granting, devising and publishing as my last will by this codicil, that I bequeath the said seventh part mentioned in the eighth clause to James Robinson and John Morrison, as trustees, to have and to hold the said seventh part of the income of my said estate, and by them applied, when the same may be received from time to time, in such sum or sums as in their judgment may be expedient and proper to the use of the said Frank P. Robinson and his family, and in case of his decease, to his child, in strict conformity with his limited estate, declaring that in this alteration of my last will, the same proceeds from no want of parental affection to the said Frank P. Robinson, but to guard against improvidence on his part, and fearing that in case the same had been bequeathed without limitation, that his family and himself might come to want and poverty."

A fourth codicil was :—" It is also my will and testament by this additional codicil that the 10th section thereof limiting the partition of my estate to the period of the maturity of age of the youngest child of my deceased son, Alexander, be and the same is hereby revoked, made null and void, and that said partition may proceed and be carried out at any time my executors and heirs may proceed to the partition thereof as though no such clause as the tenth, to which this codicil has reference, was inserted in the will aforesaid, my whole property and estate or any partition thereof to my heirs remaining subject to the payment of the income thereof to my beloved wife during her life."

At the date of said will the testator had five children living, viz. : the said James Robinson, John D. Robinson, Mrs. Anna R. Blair, Mrs. Mary P. Shoenberger and Frank P. Robinson. Two

of his children, viz.: William O'Hara Robinson and Alexander Parker Robinson were then dead leaving issue living.

James Robinson died in the lifetime of the testator, about January 1st, 1868, unmarried and without issue.

The testator's widow died in the year 1868.

On the 10th day of February 1873, the plaintiff sold and agreed to convey to the defendant the undivided one-sixth part of a lot of ground in the city of Allegheny, of which the testator died seised. By the terms of the agreement the defendant bound himself to pay to the plaintiff for the one-sixth of said lot the sum of $5000, of which $2000 were to be paid on the 10th day of March 1873.

On the 10th day of March 1873, the plaintiff tendered to the defendant a deed and demanded payment of the $2000 purchase-money due that day. The defendant refused to accept the deed or to pay the said instalment of purchase-money, alleging that under the will of said William Robinson, Jr., and the facts hereinbefore stated, the plaintiff was unable to convey to the defendant an estate in fee in the undivided one-sixth part of said described lot of ground.

It is admitted that the plaintiff's deed tendered the defendant was otherwise good and sufficient, if under and by virtue of the said will of his father, William Robinson, Jr., and the facts hereinbefore stated, the plaintiff is seised of and can convey to the defendant an estate in fee simple in and to the undivided one-sixth part of said described lot of ground.

This action is to recover the instalment of purchase-money, to wit, $2000, payable on the 10th day of March 1873, with interest thereon from that date.

Judgment is to be entered for the plaintiff for $2000, with interest from the 10th day of March 1873, and costs, if upon the facts the court should be of opinion that the plaintiff can convey to the defendant an estate in fee in and to the undivided one-sixth part of said lot of ground. Otherwise judgment is to be entered for the defendant, with costs.

The court below, June 16th 1873, entered judgment for the plaintiff for the sum of $2000, with interest from the 10th day of March 1873, with costs.

The defendant sued out a writ of error and assigned so entering judgment for error.

*W. Owens, Jr.,* for plaintiff in error.

*M. W. Acheson* (with whom was *W. D. Moore*), for defendant in error.—A devise of the *rents* and *profits* of land is equivalent to a devise of the land itself: 2 Jarm. on Wills 534; Van Rensselaer *v.* Dunkin, 12 Harris 252; Potts's Appeal, 6 Casey 168; McKee-

han v. Wilson, 3 P. F. Smith 74; Parker's Appeal, 11 Id. 478. The devising words to the plaintiff following devises in fee to the children of the testator's deceased sons, William and Alexander, are, "In like manner to John D. Robinson the one-seventh part of said net income." This is a devise of the fee, Ogden's Appeal, 20 P. F. Smith 501; and the superadded words, "with power to devise the same by will to such of his brothers and sisters, or their children, as he may elect or nominate to that end," do not cut down the estate of inheritance. The "power to devise" is simply a power, and creates no trust in favor of the "brothers or sisters, or their children:" Kerr v. Verner, 16 P. F. Smith 326; Physick's Appeal, 14 Wright 128; Yarnall's Appeal, 20 P. F. Smith 335; Jackson v. Robbins, 15 Johns. 537; McCullough v. Gilmore, 1 Jones 370. Where there is a devise to a person for life, with remainder to his heirs, the first taker or ancestor shall have an estate in fee; and it is immaterial that the testator did not so intend: Criswell's Appeal, 5 Wright 288; Curtis v. Longstreth, 8 Id. 297; 2 Jarm. on Wills 246; George v. Morgan, 4 Harris 95; Doebler's Appeal, 14 P. F. Smith 9; Kleppner v. Laverty, 20 Id. 70. The fact that the first taker, or ancestor, is invested with the *power of appointment*, does not exclude the application of the rule in Shelley's Case: Kay v. Scates, 1 Wright 31; Potts's Appeal, 6 Casey 168; Nice's Appeal, 14 Wright 143. The first taker is regarded as the preferred object of the testator's bounty, and in doubtful cases the gift is to be construed so as to make it as effectual to him as possible: McKeehan v. Wilson, 3 P. F. Smith 79; Amelia Smith's Appeal, 11 Harris 9. In the interpretation of wills, equality among children is favored: Malone v. Dobbins, 11 Harris 296.

The opinion of the court was delivered, October 22d 1873, by

AGNEW, J.—This is a difficult will to interpret. Its arrangement is unskilful, and its expressions obscure, and the word heirs used in different senses, oftener referring to children than to a line of descent. An attentive reading of the will and codicils, however, reveals two leading thoughts of the testator as to his children: First, that his "whole estate" should be divided into seven equal parts and divided among his living children, and the children of his deceased sons, at the arrival of the youngest child of Alexander Parker Robinson at full age. This is to be found as far down as the tenth section, which, under the act relating to wills (there being no devise over), would invest the possessor of each share of the *whole* estate with a fee in the lands. The second leading thought in orderly arrangement, but first in the order of the will, was that the shares given to his living sons should be so limited and restricted in enjoyment that the income only should be paid to them during their lives. This is to be found in the third clause.

[Leech v. Robinson.]

He says: "I hereby further declare that it is my will that the *entire income* of my estate shall be divided equally share and share alike amongst or between all my children as follows, that is to say ———." Then follow the 3d, 4th, 5th, 6th, 7th and 8th sections, that especially dispose of the income among his five living children and all the heirs or children of his sons William O. and Alexander P. In some of these the bequest of the income is clearly for life, and in others, if the income were the principal, it would be in fee. But this is of no importance, when we discover from other parts of the will that by the word "income" the testator meant income in its ordinary sense—the profits or earnings of the principal estate, and that this principal is left to be disposed of by other sections of the will. This reconciles the ninth and that part of the twelfth section which relate to the income. They are found to refer to the income only to be paid to his living sons during life, and show clearly that as to the income they were to be contented with that alone during life. After the ninth comes the tenth, which is the first to dispose of the *whole estate*, and divides it into seven equal parts, to be allotted when the youngest child of Alexander Parker Robinson should arrive at majority. Having in the previous sections disposed of the *income* of the estate, the mind of the testator in the tenth section came to the *principal* of the estate, which he here terms "the whole of my estate," and disposes of by the partition provided for; but guards against an infringement of the previous sections as to income by saying, "subject to the restrictions and limitations specified in the foregoing clauses as to descent to my heirs." The word *heirs* here means children, and evidently refers to the living children and the children of his deceased children named in the foregoing sections. It is evident that while the writing of the will was in progress the testator turning back to the tenth section, thought there might be some obscurity in its language, and therefore before closing and after appointing executors, he says: "That as little obscurity as possible as to phraseology may rest upon the settlement of my estate, as provided for in this last will and testament, it is my design to invest each of my living heirs with a life estate in the income of my property, with reversion (meaning remainder) over to their heirs, as provided for above on the maturity of the youngest child of my son Alexander, when and at which time the respective proportions of the heirs of my sons William and Alexander may be set apart and vested in them in fee." Here he evidently referred to the provisions of the tenth section dividing his whole estate, as being intended to convey the property, that is the principal, to the heirs of the living children, and brings out distinctly the difference in his own thoughts between the income and the principal expressed by the words "whole estate."

These impressions of the testator's meaning are strengthened by

the codicils.  In the first he adds to the number of executors by appointing a stranger who would be more likely to see that the provisions of the will would be executed strictly.  In the second he corrects what he deemed was an error in giving to Frank P. a personal control of his share of the income by appointing trustees to measure it out to him according to the wants of himself and his family.  The third relates to a matter entirely independent, and the fourth revokes so much of the tenth section as fixed the *time* of the partition at the arrival of Alexander's youngest child at majority, and goes on to say, "and that said partition may proceed and be carried out at any time.  The executors and heirs may proceed to the partition thereof as though no such clause as the tenth, to which this codicil has reference, was inserted in the will aforesaid, my *whole property and estate on any partition thereof to my heirs* remaining subject to the payment of the income thereof to my beloved wife during her life."  By that codicil the testator, while annulling the tenth section, evidently intended to retain so much of it as related to the partition, for he makes it operative whenever the executors and heirs should choose to proceed to make it.  That this partition was to operate on the entire estate including the principal referred to in the tenth section under the terms " the whole of my estate," is proved by the concluding clause, which makes the whole property and estate subject to the payment of the income of his wife.

This is made still clearer by reading it in connection with the clause providing for his wife, which gave to her " all my property, estate and effects real, personal and mixed, of whatsoever kind and nature, and wheresoever situated at the time of my decease, to have and to hold, to use, occupy and enjoy the same fully, freely and absolutely during her life."  The " whole property and estate" in the codicil evidently covers the property devised to the widow for life, and is greater than it, for the devise and bequest to her are excepted out of it.

From the whole of the will and the codicils we gather the intent of the testator to give his entire estate first to his wife for life, and then to his children in equal shares absolutely and in fee, but to limit and restrict the use and enjoyment of his living children to the income until partition, and to make the concurrence of the executors necessary to determine when it would be prudent to make the partition.  This control of the executors is clearly expressed in the fourth codicil, and is the substitute for the provision in the tenth section—that partition should not be made until Alexander's youngest child came of full age.

                                        Judgment affirmed.

SHARSWOOD, J., dissented.